UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

TITA MONIQUE MATHIES,           )
                                )
                  Plaintiff,    )
                                )
v.                              )        Case No.  1:18 CV 182 ACL
                                )
MISSOURI DEPARTMENT OF          )
SOCIAL SERVICES,                )
                                )
                  Defendant.    )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment.

(Doc. 20.)  Plaintiff has filed a Response (Doc. 27) and Defendant has filed a Reply (Doc. 30).

For the following reasons, the motion is granted.

**I.      Background**

Plaintiff Tita Monique Mathies filed a *pro se* Employment Discrimination Complaint

against Defendant Missouri Department of Social Services ("DSS") under the Americans with

Disabilities Act ("ADA").  Mathies alleges that Defendant terminated her because her supervisor

"had an issue with [her] disability."   (Doc. 1 at p. 5.)  Her claim arises from her employment at

DSS from approximately September 2016 until September 2017.  As relief, Mathies requests that

the Court remove her termination from her file and award fair compensation "for the income loss

and the emotional damage." *Id.* at 7.

On October 1, 2019, DSS filed the instant Motion for Summary Judgment claiming

entitlement to judgment as a matter of law on Mathies' claim, because DSS is immune to suit

under the Eleventh Amendment and because Mathies cannot state a claim under the ADA.

Mathies has filed a Response in Opposition to Defendant's Motion for Summary Judgment, along with documents in support. Mathies did not, however, respond to Defendant's Statement of Uncontroverted Material Facts.

In its Reply, Defendant first argues that its Statement of Uncontroverted Material Facts should be deemed admitted. Defendant also contends that its Motion for Summary Judgment should be granted, as there are no material facts at issue in this case and Defendant is entitled to judgment as a matter of law.

## II. Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.*, 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show there is doubt as to the facts. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must set forth specific facts showing there is sufficient evidence in her favor to allow a jury to return a verdict for her. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 324.

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita*, 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.*, 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of

any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000).

Finally, the court must resolve all conflicts of evidence in favor of the nonmoving party. *Robert*

*Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 210 (8th Cir. 1976).

## III.     Facts

Defendant has, in accordance with the Court's Local Rules, submitted a Statement of

Uncontroverted Material Facts.  Plaintiff has failed to file any response to the Statement.

Local Rule 4.01(E) provides:

> Every memorandum in support of a motion for summary judgment must be
> accompanied by a document titled Statement of Uncontroverted Material Facts,
> which must be separately filed using the filing event, "Statement of
> Uncontroverted Material Facts." The Statement of Uncontroverted Material Facts
> must set forth each relevant fact in a separately numbered paragraph stating how
> each fact is established by the record, with appropriate supporting citation( s).
> Every memorandum in opposition must be accompanied by a document titled
> Response to Statement of Material Facts, which must be separately filed using the
> filing event "Response to Statement of Material Facts." The Response must set
> forth each relevant fact as to which the party contends a genuine issue exists. The
> facts in dispute shall be set forth with specific citation(s) to the record, where
> available, upon which the opposing party relies. The opposing party also shall
> note for all disputed facts the paragraph number from the moving party's
> Statement of Uncontroverted Material Facts. All matters set forth in the moving
> party's Statement of Uncontroverted Material Facts shall be deemed admitted for
> purposes of summary judgment unless specifically controverted by the opposing
> party.

Like any other civil litigant, a *pro se* party is required to respond with specific factual support for

her claims to avoid summary judgment.  *Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001); *see*

*also Bennett v. Dr. Pepper/Seven Up, Inc.*, 295 F.3d 805, 808 (8th Cir. 2002) (noting a party's

*pro se* status does not entitle him to disregard the Federal Rules of Civil Procedure).

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Rule 7-401(E) of this

Court's Local Rules, Defendant's facts may be deemed admitted.  The material facts, therefore,

are as follows:

Mathies worked as a probationary employee at DSS in the position of Family Eligibility Specialist from approximately September 2016 until September 2017.  She was an at will employee.  DSS provided Mathies various trainings throughout her employment, including the following:  Mathies was provided resource guides to assist her in her daily job details; she was sent to St. Louis for a one-week job training; and she was partnered with a mentor to assist her with her daily tasks.

Mathies' performance logs (Doc. 23-2 at pp. 24-26) indicate that she needed to improve on dependability—specifically, she appeared late to work and left without prior approval—and number of calls per hour.  Mathies struggled with the Missouri Eligibility Determination and Enrollment System and meeting call objectives.

By letter dated September 15, 2017, Mathies was terminated from her position of employment with DSS.  DSS's termination letter to Mathies stated, in relevant part:

> For the reasons indicated herein, you are hereby notified of your dismissal from employment with the Family Support Division (FSD) effective September 15, 2017, at the close of business. This action is being taken subject to your right to show reasons why this dismissal should not be effective. . .
>
> The statutory authority for your dismissal is contained in 36.380 RSMo, State Personnel Law (Merit System) which pertains to the dismissal of employees. Under this authority, a dismissal may be effected when the Appointing Authority considers that such action is required in the interests of efficient administration and the good of the service will be served thereby, and including, but not limited to, Rule 1CSR 20-3.070(2) of the Rules of the Personnel Advisory Board and Personnel Division states an employee may be subject to discipline up to and including dismissal for reasons including, but not limited to, when he or she:
>
>> (B) Is incompetent, inadequate, careless, or inefficient in the performance of the duties of his/her position or has failed to meet established minimum standards in the performance of those duties.
>
> You have also violated Department of Social Services (DSS) policies (available on DSS' Intranet) including but not limited to:

●#2-115 (Work Rules) which states in part that employees must perform assigned tasks efficiently, on a timely basis, and within established quality standards.

●#2-122 (Performance and Appraisal System) which states in part that the mission of Missouri State Government is to provide essential services to Missouri citizens. Meeting this commitment requires that each employee perform his or her job as capable as possible.

When you began employment with the Department of Social Services as a Youth Specialist on September 16, 2015; you were made aware of these policies as evidenced by your training record which reports that you reviewed DSS' Employee Handbook on October 4, 2015, attended New Employee Orientation on October 19, 2015 and on September 22, 2016, which covered the topics of civil rights and diversity, harassment, benefits, work rules, code of conduct and computer security access. . . .

You requested and were transferred effective May 1, 2017 to the call center located in St. Charles, Missouri performing call center duties. On May 15, 2017, you requested and were approved to be transferred back to the Cape Girardeau call center. During your probationary period, you have been a part of meetings and discussions as it relates to your performance in both call center locations. On September 11, 2017, you were presented with a Probationary Performance Appraisal . . . whereby you were rated as Needs Improvement overall for the period of September 16, 2016-September 15, 2017 which indicates that despite these meetings and trainings, you are unable to process the tasks correctly as a [Family Support Eligibility Specialist].
…
In the Quality of Work category of your appraisal, you were rated 3, which is Needs Improvement.  Your supervisor noted that your lack of ability to follow detailed instructions and your inability to follow tasks that include multiple steps combined with your lack of knowledge of policy and system navigation left you unable to proficiently interpret eligibility for benefits and/or recognize errors.
…

The overall comments in your appraisal indicate that despite training, mentoring, supervisor counsel and redirection you have not exhibited the skills needed to perform successfully as a [Family Support Eligibility Specialist]. You have not shown a working knowledge of policy, and cannot navigate systems without assistance and you are unable to identify and resolve customer issues. As all efforts to support your development have proven unsuccessful, your dismissal is required in the interest of efficient administration and the good of the service will be served thereby.

(Doc. 23-2.)

5

IV.     **Discussion**

A.      **Eleventh Amendment**

DSS first argues that Mathies' claim is barred by the Eleventh Amendment because she sues only for monetary and retrospective relief.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States, by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has long held that states enjoy immunity from lawsuits by their own citizens. *See Hans v. Louisiana,* 134 U.S. 1, 15 (1890); *Klingler v. Director, Dept. of Revenue, State of Mo.,* 455 F.3d 888, 893 (8th Cir. 2006). The Supreme Court has also held that states and their agencies enjoy sovereign immunity from lawsuits seeking money damages that are filed pursuant to Title I of the ADA, which prohibits employment discrimination on the basis of disability. *Board of Trustees of Univ. Of Ala. v. Garrett,* 531 U.S. 356, 360 (2001); *Klingler,* 455 F.3d at 893.

There are three recognized exceptions to Eleventh Amendment immunity: (1) where the state waives immunity by consenting to suit in federal court; (2) where Congress abrogates the state's immunity through valid exercise of its powers; and (3) under *Ex parte Young*, 209 U.S. 123 (1908), where the plaintiff files suit against state officials seeking prospective equitable relief for ongoing violations of federal law. *Keselyak v. Curators of the University of Missouri*, 200 F. Supp. 3d 849, 854 (W.D. Mo. 2016) (citing *Sundquist v. Nebraska*, 122 F. Supp.3d 876 (D. Neb. 2015)).

In this case, Mathies requests the following relief:

I would like the Courts to view my case based on the documents that I have that prove my termination was not due to not meeting performance goals. I would like

6

to be able to have the termination removed from my file and to be fairly
compensated for the income loss and emotional damage.

(Doc. 1 at p. 7.)  Mathies also represented in her Complaint that the complained about

acts were no longer being committed by DSS.  *Id.*

Mathies' Complaint reveals she is seeking only monetary and retrospective relief.  There

is no evidence that DSS, a state agency, has consented to suit or waived immunity.  Thus,

Defendant DSS is entitled to Eleventh Amendment immunity on Mathies' claims.

### B.    ADA Claim

Even if Mathies' claim were not barred by the Eleventh Amendment, it fails on its merits.

The ADA prohibits discrimination by a covered employer against a qualified individual with a

disability because of the disability.  A "disability" under the ADA is "a physical or mental

impairment that substantially limits one or more of the major life activities of [an] individual."

42 U.S.C. § 12102(2)(A).  Mathies must prove that she is a "qualified individual" under the

ADA.  To be a qualified individual within the meaning of the ADA, an employee must (1)

possess the requisite skill, education, experience, and training for his position, and (2) be able to

perform the essential job functions, with or without reasonable accommodation.  *Brannon v.

Luco Mop Co.,* 521 F.3d 843, 848 (8th Cir. 2008) (quoting *Fenney v. Dakota, Minn.,* 327 F.3d

707, 712 (8th Cir. 2003)).

In assessing Mathies' wrongful termination claim, the Court applies "the familiar

*McDonnell Douglas* burden-shifting framework in ADA cases."  *Kosmicki v. Burlington N. &

Santa Fe Ry. Co.,* 545 F.3d 649, 651 (8th Cir. 2008); *McDonnell Douglas Corp. v. Green,* 411

U.S. 792, 802-04 (1973).  Under this framework, Mathies first must make out a prima facie case

by showing that she was disabled within the meaning of the ADA and qualified to perform the

essential functions of her job and that she suffered an adverse employment action because of her

disability.  *Willnerd v. First Nat. Nebraska, Inc.,* 558 F.3d 770, 777 (8th Cir. 2009).  If Mathies makes this showing, the burden of production shifts to Defendant to articulate a legitimate, non-discriminatory reason for the adverse action.  *Id.*  If Defendant meets this burden, the burden of proof lies with Mathies to discredit Defendant's stated reasons for the alleged disparate treatment and to show circumstances raising a reasonable inference that the real reason for her discharge was her disability.  *Kosmicki,* 545 F.3d at 651.

Mathies argues that her employment was terminated due to her disability and not due to performance issues.  Defendant argues that Mathies cannot make a prima facie case of discrimination because she was unable to perform the essential functions of her job and she was discharged due to poor performance.

In her Complaint, Mathies alleges that her supervisor "mentioned to an employee she wanted me gone due to the fact she felt I was abusing my [Family Medical Leave Act] FMLA." (Doc. 1 at p. 6.)  She claims that her supervisor "also mentions FMLA several times in [her] recommendation for termination."  *Id.*  Mathies does not indicate the nature of her alleged disability in her Complaint.  In her Response in opposition to Defendant's Motion for Summary Judgment, however, Mathies states that she experienced an anxiety attack at work in September 2016, and that her supervisor told her "sometimes you just have to suck it up."  (Doc. 27.)  She states that she subsequently used FMLA leave when she experienced a panic attack, and her supervisor advised her to "be mindful" of her time when taking off.  *Id.*

Mathies provides no evidence that she was an individual with a disability within the meaning of the ADA.  Even assuming for the purpose of this Motion that she had such a disability—anxiety—she has not shown that she was qualified to perform the essential functions of her position with or without reasonable accommodation.

As an initial matter, Mathies does not allege that she requested an accommodation in the workplace due to her alleged disability. Mathies instead disputes that there were issues with her job performance, and claims she has provided documentation that "proves I was not advised that I was in jeopardy of losing my job for lack of performance." (Doc. 27 at p. 2.) She notes that DSS allowed her to transfer to another office for a period within her first six months due to personal reasons, which the DSS handbook indicates is only permitted for employees "meeting all performance metrics." *Id.* Mathies next contends that she improved her performance after receiving some in-office training at her request. *Id.* She alleges that she was "shocked" when she was advised she could either resign or be terminated due to performance, because "if I wasn't performing the way I was suppose[d] to I should have been on a Performance Improvement Plan with my supervisor prior to being terminated." *Id.* Mathies also alleges that the recommendation for termination states that her dependability was an issue, even though most of the days she missed were FMLA-approved days. *Id.*

The undisputed facts, however, reveal that Mathies was not adequately performing her job. Specifically, Mathies made numerous errors and was unable to accomplish goals in a timely manner. (Affidavit of Rachel Cauble, Doc. 23; Affidavit of Linda Vandergrief, Doc. 23-1.) Mathies admitted to these performance issues in her deposition. (Doc. 23-2 at pp. 9, 14, 18.) Mathies' supervisors regularly spoke with her about these errors and attempted to assist her with improving her performance. *Id.* DSS also sent Mathies to multiple trainings aimed at improving her performance. (Affidavit of Rachel Cauble, Doc. 23 at p. 1.) Despite these interventions, Mathies consistently performed at a 3/10 rating, which indicates that she was unsuccessful in her position. *Id.* at p. 2; Performance Appraisal, Doc. 23 at p. 3-7.

Mathies provides no support for her allegation that she would not have been able to transfer to a different office if she were not meeting all performance standards.  The documents she submitted in opposition to Defendant's Motion are not supportive of her claim, and instead tend to lend support to Defendant's Motion.[1]  For example, Mathies has attached a copy of DSS Administrative Policy regarding the "probationary period," which provides that any employee who is found to be lacking in required skills or level of performance may be removed from the position at any time during probation by dismissal."  (Doc. 27-5 at p. 2.)  There is no reference to a "Performance Improvement Plan."  This provision belies Mathies' claim that her supervisor was required to place her on a Performance Improvement Plan prior to terminating her for performance issues.

Mathies also claims that her performance improved with additional training and cites figures indicating her task processing average had increased.  (Doc. 27-2 at p. 3.)  DSS stated that this figure "would not be an accurate average in relation to Ms. Mathies," as she spent more time on this particular task compared to other employees.  *Id.*  Additionally, in the same section titled "Quality of Work," it was noted that, "due to her lack of ability to follow detailed instructions," Mathies had 15 of 15 overdue assigned tasks.  *Id.*  Mathies was "unable to proficiently interpret eligibility for benefits to recognize errors," and her mentor and supervisor observed that she "appears easily overwhelmed by tasks that include multiple steps."  It was concluded that Mathies was "best able to handle single step processes."  *Id.*  Further, the email communications between Mathies and her supervisors that she has submitted convey that

---

[1]Defendant accurately points out that these documents are not properly authenticated.  While "pro se litigants are not excused from compliance with relevant rules of the procedural and substantive law," courts liberally construe pro se litigants' filings.  *Schooley v. Kennedy*, 712 F.2d 372, 373 (8th Cir. 1983) (citations omitted).  The Court afforded Mathies some leniency and considered the documents attached to her Response.

Mathies was very much aware of her performance issues and feared losing her job as a result. (Doc. 27-1 at p. 3-6.)

The undisputed evidence reveals that Mathies was not adequately performing her job. Not only does Mathies fail to allege she requested an accommodation due to her alleged disability, she does not attempt to link her performance issues to her disability. Consequently, Mathies has not demonstrated that she was qualified to perform the essential functions of her position with our without accommodations.

Finally, Mathies cannot show that she suffered an adverse employment action due to her disability. Contrary to Mathies' allegation, her termination letter does not cite her use of FMLA leave as a grounds for her termination. Mathies is presumably referring to the letter's reference to the "Dependability category of your appraisal," in which she was rated 3 denoting "Needs Improvement." (Doc. 23-2 at p. 30.) In support of this finding, DSS stated that Mathies had overdue cases "due to [her] lack of knowledge and failure to meet supervisor deadlines." *Id.* It was also noted that Mathies had been "counseled concerning [her] use of leave due to low leave balances," and with regard to her "use of [her] personal cell phone and logging in and being in ready status at the time [she was] to report to work." *Id.* This single reference to "leave" does not refer to approved FMLA leave. It is apparent that Mathies' dependability was rated low for issues unrelated to any alleged disability.

The termination letter demonstrates that Mathies was being terminated for failing to meet the requirements of her job. The letter set out detailed  findings taken from Mathies' performance review. With regard to Mathies' work quality, the letter stated her supervisor found that she lacked the "ability to follow detailed instructions," and her "inability to follow tasks that include multiple steps combined with [her] lack of knowledge of policy and system navigation

left [her] unable to proficiently interpret eligibility for benefits and/or recognize errors." (Doc. 23-2 at p. 23-30.) The letter concluded that "despite training, mentoring, supervisor counsel and redirection," Mathies had not "exhibited the skills needed to perform successfully as a [Family Support Eligibility Specialist]." *Id.* at 30. She had not shown "a working knowledge of policy, and cannot navigate systems without assistance," and was "unable to identify and resolve customer issues." *Id.* Mathies' termination letter clearly demonstrates she was terminated due to well-documented performance issues rather than her alleged disability.

### Conclusion

In sum, Mathies' claim is barred by the Eleventh Amendment. Mathies' claim also fails on its merits, as she provides no evidence that she was an individual with a disability within the meaning of the ADA, or that she was qualified to perform the essential functions of her position with or without reasonable accommodation. Moreover, Mathies does not demonstrate that she was terminated because of her disability. Mathies presents no issues of fact to oppose Defendant's Motion for Summary Judgment. The Court grants Defendant's Motion for Summary Judgment because Mathies cannot establish a prima facie case of disability discrimination.


Accordingly,


**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. 20) is **granted**. A separate Judgment in favor of Defendant will accompany this Memorandum and Order.

/s/ Abbie Crites-Leoni
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of April, 2020.